FILED
JUN - 6 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HARRY R. SCHREIBER<br>214 Hyman Dr<br>Aspen, CO 81611<br>Tel: 970-704-0417<br><br>    Plaintiff Pro Se,<br><br>v.<br><br>J. CHRISTOPHER KOHN,<br>Director of the Financial<br>Litigation Unit of the Department of<br>Justice - Civil Division, John Does 1-10,<br><br>    Defendants. | CIVIL ACTION NO.<br><br><br><br><br><br><br>CASE NUMBER   1:06CV01051<br><br>JUDGE: Ellen Segal Huvelle<br><br>DECK TYPE: TRO/Preliminary Injunction<br><br>DATE STAMP: 06/6/2006 |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
AND MEMORANDUM OF LAW**

TO THE HONORABLE JUDGE OF THIS COURT:

    COMES NOW the Plaintiff, HARRY R. SCHREIBER, Pro Se, and files this Motion for Preliminary Injunction and Memorandum of Law, as follows:

    1. Plaintiff was a named defendant in the case styled <u>United States v. Schreiber</u>, Case No. A-95-CR-130-JRN, Western District of Texas-Austin Division, and pursuant to a Judgment filed therein on July 20, 1999, Plaintiff was ordered to pay restitution in the sum of $354,253.11, said amount to be paid to the Clerk of the Court for transfer to and distribution by Randolph Osherow, Chapter 7 Trustee for Case No. 89-13314-FM, Bankruptcy Court for the Western District of Texas-Austin Division (hereinafter the "Bankruptcy Trustee") (copy of

Restitution Order attached to Complaint as Exhibit 1). Plaintiff was furthered ordered to pay a criminal fine in the amount of $80,000.00, payable to the Clerk of the Court for the Western District of Texas-Austin Division (hereinafter "Clerk of the Court").

2. Subsequent to Plaintiff's release and commencement of his term of Supervised Release under the direction of the United States Probation Office for the District of Colorado, Plaintiff has been the subject of various collection efforts by the Financial Litigation Unit of the U.S. Attorney's Office for the Western District of Texas (see Exhibit 2 attached to Complaint) (hereinafter all agents, assistants, deputies and/or employees of the Financial Litigation Unit shall be collectively referred to as the "FLU").

3. Plaintiff has submitted documentation to the FLU in support of his contention that all monetary sums set forth in the Restitution Order have previously been paid/credited to the authorized payees thereof, and that no further payments are allowable or otherwise collectible from Plaintiff under the terms of the Restitution Order and the laws of the United States. Plaintiff has further submitted documentation to the FLU in support of his contention that the maximum criminal fine collectible under the laws and regulations in effect at the time of the offense herein is $15,000.00.

4. If the Defendants are allowed to continue their collection efforts, and do in fact collect all or any additional portion of the restitution balance set forth in the Restitution Order from Plaintiff, such collection would be in violation of the laws

(see Pre-Sentence Report, p. 16, attached to Complaint as Exhibit 3). The additional sum of $210,158.98 identified in the Pre-Sentence Report as fees and expenses of the Bankruptcy Trustee was subsequently disallowed as a restitution amount by a decision of the Fifth Circuit Court of Appeals in U.S. v. Izydore, 167 F.3d 213, 222 (5th Cir.1999).

7. The above balance of $197,490.93 designated as restitution to NASSCO was paid/satisfied in full, as confirmed by the Bankruptcy Trustee in his Chapter 11 Trustee's Final Report and Account in Case No. 89-13314-FM:

> "12. At the request of Westminister, National Steel and Shipbuilding Company ("NASSCO") extended a secured post-confirmation advance to Marhil of $197,490.03. NASSCO had proposed an offset of their remaining advance ($166,001.20 at February 18, 1992) against the payables due Marhil of $52,793.91, resulting in a net secured claim against the estate of $107,934.29 . . .
> The Trustee and NASSCO representatives negotiated an Asset Purchase and Sale Agreement whereby NASSCO _released their secured claim of $107,934.29 and agreed to tender cash to the Trustee in the amount of $40,000.00_ in exchange for the following assets . . .
> The Asset Purchase and Sale Agreement with NASSCO was executed on July 9, 1991, and the transaction completed shortly thereafter."

Trustee's Final Report and Account, ¶ 12 and 13 (copy attached as Exhibit 4).

8. The above balance of $110,000.00 designated as restitution to "Supplier A/P's" fails to identify one or more individuals or other entities to be compensated under this portion of the Restitution Order. All identified suppliers under the Chapter 7 bankruptcy proceeding have been paid, or have otherwise failed to accept tendered payments.

4

9. The above balance of $37,762.18 designated as restitution to "A/R's" fails to identify one or more individuals or other entities to be compensated under this portion of the Restitution Order.

10. The above balance of $9,000.00 designated as restitution to "Lease payments" was paid/satisfied in full, as confirmed by the sworn testimony of two bank officials/representatives in the course of the Schreiber criminal trial.

11. On or about February 14, 2006, the Bankruptcy Trustee filed a Report of Unclaimed Funds with the Bankruptcy Court, and remitted the sum of $17,080.40 to the Clerk of the Court (see Exhibit 5 attached). These funds had previously been delivered by the Clerk to the Bankruptcy Trustee for distribution under the Restitution Order, and represented monies received on behalf of the Plaintiff herein. Subsequent to the Clerk's receipt of these funds on or about February 14, 2006, this sum of $17,080.40 was then paid over to the U.S. Treasury, rather than being applied against the outstanding criminal fine balance owed by the Plaintiff.

12. This Court may issue a preliminary injunction only when the movant (Plaintiff herein) demonstrates that (1) there is a substantial likelihood plaintiff will succeed on the merits; (2) plaintiff will be irreparably injured if an injunction is not granted; (3) an injunction will not substantially injure the other party; and (4) the public interest will be furthered by an injunction. *Davenport v. Int'l Bhd. of Teamsters*, 334 U.S. App. D.C. 228, 166 F.3d 356, 361 (D.C. Cir. 1999). These factors "interrelate on a sliding scale and must be balanced against each other."

*Davenport*, 166 F.3d at 361 (citing *Serono Labs. V. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998)). A review of the documentation and relevant facts as set forth in Plaintiff's Original Complain indicates that the determinative issue in this matter is a question of properly accounting for monies which have previously been paid to designated payees under the Restitution Order, along with the proper application of United States laws and regulations addressing the payment of restitution to identified payees under a restitution order. This review herein clearly indicates a substantial likelihood that Plaintiff herein will succeed on the merits of his complaint. Furthermore, the function of this preliminary injunction is to preserve the *status quo* pending a final determination of the rights of the parties herein. *Washington Metropolitan Area Transit Comm. v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977). In addition, when the balance of the equities flowing from an examination of the remaining three factors favors the granting of a preliminary injunction, the Court need not conduct a rigid probability analysis. *WMATA*, 559 F.2d at 843-45, quoting with approval *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d. Cir. 1953) ("To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i.e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation").

13. Plaintiff would show this Court that there is no outstanding balance due or payable under the Restitution Order in A-95-CR-130-JRN, and that any collection of funds by the Defendants under the authority or jurisdiction of said Restitution Order would constitute a "double recovery" of restitution monies from Plaintiff herein. This double recovery is clearly disallowed under the laws and regulations of the United States, as specifically set forth in 18 U.S.C. § 3664(j)(2). In that the Clerk of the Court has already paid undeliverable restitution monies over to the U.S. Treasury without properly crediting same to Plaintiff's criminal fine balance, it is equally clear that Plaintiff will be irreparably injured if the collection efforts of the FLU continue and additional monies are obtained from Plaintiff. The likelihood of Plaintiff recovering any such monies is minimal, at best.

14. The harm to Plaintiff which would result from a denial of a preliminary injunction herein and the resulting continuing collection efforts of the FLU in connection with the Restitution Order greatly outweigh any harm that could be perceived as accruing to the Defendants herein. It is difficult to imagine any harm whatsoever that could pass to Defendants herein by the temporary suspension of their collection efforts while a final determination is made as to the legality of those same collection efforts. The mere delay which is inherent in a preliminary injunction's maintenance of the *status quo* is not a "harm" that must be balanced against the harm to plaintiff that would result in the absence of a preliminary injunction. See *Abel Converting, Inc. v. United States*, 679 F.Supp. 1133, 1142 (D.D.C. 1988).

15. By maintaining the *status quo* during the pendency of this action, the public interest in preventing the FLU from collecting a "double recovery" from Plaintiff under the Restitution Order weighs heavily in favor of granting a preliminary injunction herein, in that Plaintiff has no adequate remedy at law in the event additional monies are collected from him as a result of the FLU's continuing collection efforts.

## CONCLUSION

This Court should grant a preliminary injunction enjoining the Defendants from pursuing any further collection efforts under the Restitution Order and Criminal Judgment in A-95-CR-130-JRN, pending the Court's final determination as to the legality of any such collection efforts by or on behalf of the Defendants.

Respectfully submitted,

_____
HARRY R. SCHREIBER
Plaintiff Pro Se
214 Hyman Dr
Aspen, CO 81611
Tel: 970-704-0417